**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| CHRISTOPHER-MICHAEL WILLIAMS, | : | Case No. 2:25-cv-1410 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge James L. Graham |
| | : | Magistrate Judge Kimberly A. Jolson |
| | : | |
| GARY L. GALLOWAY, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND REPORT AND RECOMMENDATION

Plaintiff, an individual currently incarcerated at Chillicothe Correctional Institution ("CCI") and proceeding pro se, brings this civil rights action under 42 U.S.C. § 1983. Before the Court is Plaintiff's Complaint, in which he alleges that he was denied participation in a Family Day event with R.A.M. Gavel Club ("Family Day") at CCI because of his sex-crime convictions against children. (Doc. 1-1 at 2–17). Plaintiff names five Defendants: CCI Warden Gary L. Galloway, CCI Secretary and R.A.M. Gavel Club Advisor Erin Cottril, CCI Unit Manager Angela Ivey, CCI Chaplain Alfred Harvester Marcus, and Staff Counsel Margret Moore with Ohio Department of Rehabilitation and Corrections ("ODRC"). (*Id.* at 1–3). By separate Order, Plaintiff has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is before the Court for a *sua sponte* review of the Complaint to determine whether the Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. § 1915(e)(2)(B).

## I.  STANDARD

A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law.  *Neitzke v. Williams*, 490 U.S. 319, 328–29 (1989); *Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990).  An action has no legal basis when the defendant is immune from suit or when a plaintiff claims a violation of a legal interest which clearly does not exist.  *Neitzke*, 490 U.S. at 327 (citation omitted).  An action has no factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992).  *See also Lawler*, 898 F.2d at 1199.  The Court need not accept as true factual allegations that are "fantastic or delusional" in reviewing a complaint for frivolousness.  *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 327–28).  Congress has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted.  28 U.S.C. § 1915(e)(2)(B)(ii).  A complaint filed by a pro se plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers."  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  *See also Hill*, 630 F.3d at 470–71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

The screening procedures established by § 1915 apply to complaints filed by prisoners against governmental entities, officials, or employees regardless of whether the plaintiff has paid the filing fee or is proceeding *in forma pauperis*.  *See* 28 U.S.C. § 1915A(a); *Hyland v. Clinton*, 3

F. App'x 478, 479 (6th Cir. 2001); *Bell v. Rowe*, No. 97-4417, 1999 WL 196531, at *1 (6th Cir. Mar. 22, 1999) (citing *McGore v. Wrigglesworth*, 114 F.3d 601, 608–09 (6th Cir. 1997)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II.   COMPLAINT

Plaintiff's Complaint is organized into factual allegations and three broader claims, alleging that Defendants violated his constitutional rights when they denied his participation in Family Day based on his criminal convictions. (Doc. 1-1 at 1–17).

### A.   Factual Allegations

Plaintiff alleges that Defendant Cottril, Staff Advisor for the Gavel Club, informed Plaintiff that he would not be allowed to participate in Family Day because of his criminal charges, a decision made by Cottril and Defendant Ivey. (*Id.* at 2, 5). This conversation occurred right after Plaintiff and his family participated in a marathon fundraiser event at CCI to raise money for a

drug prevention program on September 19, 2025. (*Id.* at 5). Plaintiff alleges that Cottril referred to the Family Day application, which cautioned inmates that "no one with crimes against children will be permitted to attend." (*Id.* at 5–6). He alleges that he was not permitted to participate in Family Day, despite attending previous family programs at CCI, depriving him of the right to participate in Family Day like other inmates. (*Id.* at 6).

Plaintiff alleges that Cottril had discriminatory intent, violating his right to equal protection and that Cottril subjected him to cruel and unusual punishment. (*Id.*). Other inmates participated in Family Day who were similarly situated to Plaintiff, he alleges. (*Id.*). Plaintiff lists CCI inmates who had permission to attend Family Day and alleges that these inmates are similarly situated because they all are level two inmates incarcerated at CCI who have exemplary behavior like him. (*Id.*). Plaintiff also alleges that many of the inmates in attendance were convicted of violent crimes and "some may be revealed to have victims who were children." (*Id.*).

On October 3, 2025, Plaintiff alleges that Defendant Ivey, as the "overseer" of prison programs, answered his grievance about the Family Day denial and referenced the warning on the application. (*Id.* at 2–3, 7). Plaintiff alleges that these facts prove discriminatory intent against inmates convicted of certain crimes. (*Id.*). He also alleges that Ivey supported an unwritten custom that prevented inmates convicted of sex crimes or crimes against children from participating in Family Day, which he was unaware of before joining the Gavel Club. (*Id.* at 7–8). Plaintiff alleges that Ivey could override subordinate Cottril's decision but failed to do so. (*Id.* at 8).

Plaintiff further alleges that Ivey discussed the issue with Defendant Marcus, Institutional Chaplain and "overseer" of programs held in the CCI chapel. (*Id.* at 4, 7). Plaintiff alleges that Ivey and Marcus both agreed to deny Plaintiff's participation in Family Day. (*Id.* at 7). Plaintiff alleges that Marcus conspired with the other Defendants to discriminate against Plaintiff. (*Id.* at

4

8).

Plaintiff alleges that Defendant Moore, Staff Counsel for ODRC and "overseer and initiator" of prison program policies, initiated the conspiracy against Plaintiff through Moore's statement about prison policies. (*Id.* at 4, 8). CCI never provided information nor gave reasonable notice about the "secret unwritten policy" that his crimes would prevent him from participating in Family Day, Plaintiff alleges. (*Id.* at 8). Plaintiff also alleges that this policy creates an "arbitrary deciding factor" to let groups discriminate against certain inmates by adding the discriminatory clause, while other groups do not include the limitation. (*Id.*).

Defendant Galloway supported the other Defendants' discriminatory conduct by representing an unwritten custom as an official policy, Plaintiff alleges. (*Id.* at 9). He also alleges that Galloway "did acquiesce[], ratify, agree, permit, and allow" his subordinates to discriminate against Plaintiff. (*Id.*). Plaintiff alleges that Galloway is responsible for the other Defendants' actions and that Galloway treated him differently than similarly situated inmates. (*Id.* at PageID 18-19). Plaintiff alleges that Galloway discriminated against him based on his convicted crimes, which "lacks a rational basis." (*Id.* at 2).

### B. Alleged Constitutional Violations

In his first claim, Plaintiff alleges that Defendants violated his First Amendment right to the freedom of association when they denied him the opportunity to participate in Family Day with his children. (*Id.* at 12). Plaintiff also alleges that Defendants had "no legitimate reason" to deny his Family Day application, violating his established rights under the Fourteenth Amendment. (*Id.*). Plaintiff alleges that inmates convicted of crimes against children were denied participation in Family Day but "inmates who are similarly situated in every relevant way" were allowed to participate. (*Id.*).

Discriminatory intent is evident, Plaintiff alleges, in the Family Day application and in the answers to his grievances. (*Id.*). Plaintiff further alleges that Defendants had no legitimate penological interest in denying him Family Day when his children were allowed to visit him in the past. (*Id.*). Plaintiff alleges that Defendants effectuated this discrimination by implementing an unwritten policy that was initiated by the CCI warden, Defendant Galloway. (*Id.* at 13). Plaintiff also alleges that he was discriminated against as a "class of one." (*Id.* at 2 (citing *Willowbrook v. Olech*, 528 U.S. 562 (2000))).

In his next claim, Plaintiff again alleges that Defendants violated his Fourteenth Amendment rights to Equal Protection without having a legitimate penological interest in denying his Family Day application. (*Id.* at 14). Plaintiff also alleges that Defendants violated a fundamental right to the "integrity of the family unit," a right secured by the Due Process Clause under the Fourteenth Amendment. (*Id.*). Plaintiff alleges that inmates who are similarly situated were allowed to participate in Family Day, including inmates convicted of violent crimes. (*Id.* at 14–15). Defendants were unreasonable to treat him disparately, Plaintiff alleges. (*Id.*).

In his last claim, Plaintiff alleges that Defendants discriminated against him based on an unwritten policy created by Defendant Moore. (*Id.* at 15). Plaintiff alleges that this custom was "accepted as official policy" as an agreement between Defendants. (*Id.*). Defendants initiated a single plan and shared a conspiratorial objective to violate his rights, Plaintiff alleges. (*Id.* at 15–16). Plaintiff alleges that Defendants' conduct caused him mental anguish and that he "continues to suffer injuries and damages, both emotionally and legally." (*Id.* at 14, 16).

Plaintiff seeks declaratory, injunctive, and monetary relief. (*Id.* at 16–17).

## III.    DISCUSSION

The Undersigned understands Plaintiff to be raising the following claims:

1.  Fourteenth Amendment Equal Protection claims against all Defendants for the alleged discrimination toward Plaintiff as an inmate convicted of sex crimes against children;

2.  Eighth Amendment cruel and unusual punishment claims against all Defendants for denying Plaintiff's participation in Family Day;

3.  First Amendment Freedom of Association claims against all Defendants for allegedly infringing on his right to visit with and parent his children; and

4.  Conspiracy claims against all Defendants for collectively planning to block Plaintiff from participating in Family Day.

At this stage of the proceedings and without the benefit of further briefing by the parties, the Undersigned concludes that Plaintiff **MAY PROCEED** at this juncture with his Equal Protection and Freedom of Association claims against Defendants Galloway, Cottril, Ivey, Marcus, and Moore.  These claims include the further development of allegations against Galloway and Ivey in both their personal roles and their roles as supervisors.  (*See* Doc. 1-1 at 8–9).  The Undersigned **ADVISES** Plaintiff that this is only a preliminary determination.  The Undersigned has not made a determination as to the merits of the claims being allowed to proceed, nor considered any potential defenses.  Defendants are not precluded from filing a motion to dismiss, a motion for a more definite statement, or other appropriate motions under the Federal Rules of Civil Procedure.  *See, e.g.*, *Wiley v. Austin*, No. 8:20-cv-220, 2020 WL 6204382, at *3 (D. Neb. Oct. 22, 2020).

As explained below, however, Plaintiff's remaining allegations should be **DISMISSED** for the failure to state a claim upon which relief may be granted.

### 1.  *Official Capacity Claims for Monetary Damages*

Although Plaintiff may proceed with his Equal Protection and Freedom of Association claims, any official capacity claims for monetary relief fail to state a claim upon which relief may be granted.  Absent an express waiver, a state is immune from damages suits under the Eleventh

Amendment.  *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (and cases cited therein); *Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  The State of Ohio has neither constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts.  *See Smith v. DeWine*, 476 F. Supp. 3d 635, 652 (S.D. Ohio 2020) (citations omitted); *Johns v. Supreme Court of Ohio*, 753 F.2d 524 (6th Cir. 1985).  The Eleventh Amendment bar extends to actions where the state is not a named party but where the action is essentially one for the recovery of money from the state.  *Edelman*, 415 U.S. at 663 (citations omitted); *Ford Motor Co. v. Dep't of Treasury of State of Indiana*, 323 U.S. 459, 464 (1945).  A suit against Defendants in their official capacities would be in a way pleading the action against the entity of which Defendants are agents.  *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690 (1978).  Thus, actions against state officials in their official capacities are included in this bar.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)).

Plaintiff indicates that he is suing Defendants, employees of ODRC and CCI, in both their individual and official capacities, and he seeks monetary relief.  (Doc. 1-1 at 3–4, 17).  Defendants, as agents of the State of Ohio, are immune from suit in their official capacities to the extent Plaintiff seeks monetary relief and any such claims should be **DISMISSED**.

### 2.    *Due Process Claims*

Plaintiff's allegations that Defendants violated his due process rights also fail to state a plausible claim for relief.  The Fourteenth Amendment Due Process Clause protects individuals against the deprivation of "life, liberty, or property without due process of law."  U.S. Const. amend. XIV.  One of these protected interests must be at stake to implicate a due process violation.

*Miles v. Helinski*, No. 20-1279, 2021 WL 1238562, at \*4 (6th Cir. Jan. 29, 2021) (quoting *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)). A prisoner's liberty interests may be at stake when a prison regulation or restriction "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Finley v. Huss*, 102 F.4th 789, 812–13 (6th Cir. 2024) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (considering an inmate's liberty interest in avoiding administrative segregation). A permanent restriction on a prisoner's family visits "*may* present an atypical and significant hardship even in the prison context." *Honzu v. Doe*, No. 2:22-cv-292, 2023 WL 3506155, at \*9 (S.D. Ohio May 17, 2023), *report and recommendation adopted*, 2023 WL 5951768 (S.D. Ohio Sept. 13, 2023), (citing *Damron v. Harris*, No. 21-3877, 2022 WL 4587625, at \*2-3 (6th Cir. July 28, 2022)) (concluding that an inmate's due process claim could proceed for further development where the defendants imposed a permanent restriction on the inmate's visitations with his fiancée). That said, inmates do not have a constitutionally protected interest in "unfettered visitation." *Johnson v. Chambers-Smith*, No. 3:24-cv-44, 2024 WL 2882058, at \*3 (N.D. Ohio June 7, 2024) (citing *Bazzetta v. McGinnis*, 430 F.3d 795, 804–05 (6th Cir. 2005)) (additional citations omitted).

Plaintiff alleges that Defendants disrupted his right to family relations by denying his Family Day application. (Doc. 1-1 at 14). Plaintiff alleges that he and his children have become accustomed to their visits, and he alleges that Defendants' denial caused him mental anguish. (*Id.* at 5, 10, 14). Plaintiff's allegations, however, fall short of establishing that the denial was an "atypical and significant hardship" because limitations on family visits are an ordinary expectation of incarceration. *See McGinnis*, 430 F.3d at 804–05; *Sandin*, 515 U.S. at 484. Plaintiff does not allege that Defendants implemented a permanent restriction on his visitation rights. *See Honzu*, 2023 WL 3506155, at \*9 (citing *Damron*, 2022 WL 4587625, at \*2–3). And to the extent that

9

Plaintiff alleges he has a constitutional right to attend prison programs, such an interest does not exist. *Smith v. Weers*, No. 1:15-cv-42, 2015 WL 6738668, at *3 (W.D. Mich. Nov. 4, 2015) (collecting cases) (finding that inmates do not have a "constitutionally protected liberty interest in prison vocational, rehabilitation, and educational programs"). In sum, Plaintiff does not have a protected interest in unrestricted visits nor the right to attend prison programs. Accordingly, Plaintiff's due process claims should be **DISMISSED**.

### 3. Cruel and Unusual Punishment Claims

Plaintiff's allegation that being denied participation in Family Day constitutes cruel and unusual punishment under the Eighth Amendment fails to state a plausible claim for relief as well. The Eighth Amendment protects inmates from cruel and unusual punishment. U.S. CONST. amend. VIII. In other words, inmates are protected from the "unnecessary and wanton infliction of pain." *Barker v. Goodrich*, 649 F.3d 428, 434 (6th Cir. 2011) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). To establish a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must show that a defendant had "deliberate indifference" toward the plaintiff. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)). The alleged deprivation must result "in the denial of the minimal civilized measure of life's necessities." *Id.* (quoting *Spencer v. Bouchard*, 449 F.3d 721, 728 (6th Cir. 2006)). Only "deprivations of essential food, medical care or sanitation" or "other conditions intolerable for prison" are implicated by the Eighth Amendment. *Flanory v. Bonn*, 604 F.3d 249, 253 (6th Cir. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). And the Sixth Circuit has found that prohibiting a prisoner from visitation is not an Eighth Amendment violation. *Bazzetta v. McGinnis*, 902 F. Supp. 765, 771 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416 (6th Cir. 1984)).

Eighth Amendment claims include both an objective and a subjective component. *Cordell*

*v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)); *Rouster v. Cnty. of Saginaw*, 749 F.3d 437, 446 (6th Cir. 2014).  The subjective component requires a plaintiff to allege that a defendant "subjectively perceived facts from which to infer substantial risk to the prisoner," that the defendant drew such an inference, and then "disregarded the risk."  *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). The objective component requires that the deprivation was "sufficiently serious."  *See Rouster*, 749 F.3d at 446 (quoting *Farmer*, 511 U.S. at 834) (considering whether an inmate's medical needs were "sufficiently serious").

Plaintiff's allegations do not meet these requirements.  Plaintiff alleges that Defendants denying his Family Day application while ignoring the resulting mental harm amounted to cruel and unusual punishment without any further factual allegations.  (Doc. 1-1 at 2, 6, 10, 14).  Such threadbare assertions are insufficient to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  At any rate, being denied participation in Family Day does not rise to the level of cruel and unusual punishment.  *See Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (finding that "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment under the Eighth Amendment").  Although Plaintiff alleges that his mental health has suffered from the denial, being denied visitation for a prison program is not a deprivation of an essential need, because as explained above, prisoners do not have an unfettered right to visitation. *Johnson*, 2024 WL 2882058, at *3 (citing *McGinnis*, 430 F.3d at 804–05).  This denial is not "sufficiently serious" and does not amount to cruel and unusual punishment.  *See Overton v. Bazzetta*, 539 U.S. 126, 136-37 (2003) (finding that a temporary restriction on a prisoner's visitations, while making "confinement more difficult to bear," did not amount to cruel and unusual

11

punishment because the "withdrawal of privileges" is expected with incarceration).  Plaintiff's Eighth Amendment claims should be **DISMISSED**.

4. *Civil Conspiracy Claims*

Plaintiff's conspiracy allegations also fail to state a plausible claim for relief.  Civil conspiracy claims under § 1983 require an "agreement between two or more persons to injure another by unlawful action."  *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  Conspiracy claims warrant relief when a plaintiff shows that (1) a "single plan" existed; (2) the alleged co-conspirators had a shared objective; (3) an "overt act was committed in furtherance of the conspiracy"; and (4) he suffered an injury.  *Id.* (quoting *Hooks*, 771 F.2d at 944).  And it is well-settled in the Sixth Circuit that "conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Id.* (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)); *Moldowan v. City of Warren*, 578 F.3d 351, 395 (6th Cir. 2009) (citations omitted) (affirming dismissal of conspiracy claims under 42 U.S.C. § 1983 because the plaintiff failed to plead sufficient material facts).

Plaintiff alleges that Defendants conspired to prevent him from participating in Family Day by adopting Moore's unwritten policy that allows discrimination toward inmates convicted of sex offenses against children.  (Doc. 1-1 at 8, 15–16).  Plaintiff's allegations are too conclusory and lack the requisite specificity to state a plausible claim under 42 U.S.C. § 1983.  *See Moldowan*, 578 F.3d at 395 (citing *Gutierrez*, 826 F.2d at 1538).  Plaintiff's allegations that Defendants shared a "single plan" to deprive Plaintiff of his constitutional rights without providing further material facts are insufficient to suggest a conspiracy existed against him.  And Plaintiff fails to allege facts to show the basis of his knowledge that Defendants engaged in such a single, conspiratorial plan.

12

Labeling Defendants' actions as a conspiracy is mere speculation and therefore not enough to establish that there was a shared plan against Plaintiff to prevent him from attending Family Day. *See Regets v. City of Plymouth*, 568 F. App'x 380, 391 (6th Cir. 2014) (citation omitted); *Moore v. City of Paducah*, 890 F.2d 831, 834 (6th Cir. 1989)) (finding that circumstantial evidence can "establish an agreement between the coconspirators" but "mere speculation and conjecture are insufficient").  Plaintiff's conspiracy claims should be **DISMISSED**.

## IV.     SERVICE

Normally, the next step is for the Court to order service on the proceeding Defendants. However, Plaintiff's summons forms are deficient.  (*See* Doc. 1-6).  Specifically, Plaintiff did not fill out his name and address as directed so that the served party can know where to send an answer or motion.  (*Id.*).  The Clerk is **DIRECTED** to mail Plaintiff back these forms.  Plaintiff is **ORDERED** to complete and return them **within ten (10) days**.  For more guidance on how to correctly fill out the summons forms, Plaintiff may look to pages 9–10 and 30–32 of the Southern District of Ohio's Guide for *Pro Se* Civil Litigants.

Additionally, Plaintiff did not submit service copies of his Complaint for each Defendant. Despite proceeding *in forma pauperis*, that is still his responsibility.  Therefore, Plaintiff is **ORDERED** to file **five** service copies of his Complaint within **ten (10) days**.

Plaintiff is **WARNED** that the Court will not order service until he has completed both of these tasks.

## V.     CONCLUSION

Based on the foregoing, Plaintiff's Equal Protection and Freedom of Association claims **MAY PROCEED** for further development against all Defendants in their individual capacities, and in their official capacities to the extent that Plaintiff seeks declaratory and injunctive relief.

Because Plaintiff's other allegations fail to state a plausible claim for relief, the Undersigned **RECOMMENDS** that the Court **DISMISS** his remaining claims.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Plaintiff's cruel and unusual punishment claims, Due Process claims, civil conspiracy claims, and any official capacity claims for monetary damages against Defendants Galloway, Cottril, Ivey, Marcus, and Moore be **DISMISSED**. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

**IT IS THEREFORE ORDERED THAT:**

1. Plaintiff may proceed at this juncture on his Fourteenth Amendment Equal Protection claims and his First Amendment Freedom of Association claims against Defendants Galloway, Cottril, Ivey, Marcus, and Moore for allegedly discriminating against Plaintiff by denying his Family Day application based on his criminal conviction and therefore impeding on his right to visit with his children, without a legitimate penological interest.

2. The Clerk shall mail Plaintiff's summons forms back to him to be completed. The Clerk shall also mail Plaintiff a copy of the Southern District of Ohio's Guide for *Pro Se* Civil Litigants.

3. Plaintiff shall complete the summons forms and return them, as well as service copies of the Complaint for **each** Defendant, **within ten (10) days**. The Court will not direct service until he has done so.

4. Plaintiff shall serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' attorney(s), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed with the Clerk of Court a certificate stating the date that a true and correct copy of any document

14

was mailed to Defendants or Defendants' counsel.  Any paper received by a district judge or magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

5. Plaintiff is reminded that he must keep this Court informed of his current address and promptly file a Notice of New Address if he is released or transferred.

Date:  February 17, 2026

/s/ Kimberly A. Jolson
KIMBERLY A. JOLSON
UNITED STATES MAGISTRATE JUDGE

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).