**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| Christopher-Michael Williams, | : | |
| | : | |
| | : | Case No. 2:25-cv-01410 |
| Plaintiff, | : | |
| v. | : | Judge Graham |
| | : | |
| Gary Galloway, *et al.*, | : | Magistrate Judge Jolson |
| | : | |
| Defendants. | : | |

**OPINION & ORDER**

This matter is before the Court upon the Magistrate Judge's Report and Recommendations ("R&R") (doc. 9) as well as the Defendants' motions to dismiss (doc. 13; doc. 15; doc. 18). For the reasons that follow, the Court **ADOPTS** the R&R, in part, and **GRANTS** the motions to dismiss.

**Background**

Plaintiff Christopher-Michael Williams ("Williams"), proceeding *pro se*, is incarcerated with the Ohio Department of Rehabilitation and Correction ("ODRC") and currently housed at the Chillicothe Correctional Institution ("CCI"). The Defendants are ODRC employees. Williams brings this action alleging that his constitutional rights were violated when he was prohibited, by rule, from participating in a "Family Day"[1] event because the crimes he was convicted of involved child victims. The rule was imposed by the event organizer, the "R.A.M.

---

[1] Though Williams' allegations concern a specific event in late 2025, the parties also appear to use "Family Day" as a generic term for various institutional events for which inmates' families are invited to participate.

[1]

Gavel Club," which is administered by inmate volunteers. Williams alleges that the Defendants are responsible not only for what he contends is a discriminatory policy for Family Day participation, but also for a policy which allowed inmates, such as those on the R.A.M. Gavel Club board, to implement such discriminatory policies against other inmates like Williams.

Williams' initial Complaint was screened by the Magistrate Judge, pursuant to the Prison Litigation Reform Act ("PLRA"), to determine whether the Complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune to such relief. 28 U.S.C. § 1915(e)(2). The Magistrate Judge determined that Williams should be allowed to proceed on his Equal Protection and Freedom of Association claims against all five Defendants, each brought pursuant to 42 U.S.C. § 1983, but that the remaining claims should be dismissed. *See* doc. 4.

Williams filed an Amended Complaint (doc. 8), which the Magistrate Judge again screened pursuant to the PLRA, which yielded a supplemental R&R. *See* doc. 9. The Magistrate Judge again determined that the Equal Protection and Freedom of Association claims should proceed. The Magistrate Judge also construed the amended allegations to be stating a claim for retaliation, which, "in an abundance of caution" was also allowed to proceed. *Id.* at # 293. However, despite the amendments, the Magistrate Judge again recommended dismissal of Williams' remaining claims.

Williams did not object to the R&R, and the time for doing so has passed. Defendants filed motions to dismiss (substantively identical to one another) which

[2]

argued for dismissal of all claims in Williams' Amended Complaint.[2] *See* doc. 13, doc. 15, doc. 18. Williams filed a response in opposition to dismissal. Doc. 26. These matters are now fully briefed and ripe for decision.

**STANDARD OF REVIEW**

Section 636 of Title 28 of the United States Code sets forth the jurisdiction and powers of magistrate judges, and, in so doing, "essentially creates two different standards by which district courts review a magistrate judge's finding." *Monroe v. Houk*, No. 2:07-CV-258, 2016 WL 1252945, at *1 (S.D. Ohio Mar. 23, 2016). As to dispositive motions—e.g., a motion to dismiss or a motion for summary judgment— or an initial screening pursuant to 28 U.S.C. § 1915A, a magistrate judge may be designated to make a report and recommendation to the district court for the disposition of the motion. 28 U.S.C. § 636(b)(1)(B). When a prisoner seeks redress from a governmental entity, the court must screen the complaint and dismiss any portion of the complaint which is determined to be "frivolous, malicious, or fails to state a claim upon which relief can be granted; or… seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C.A. § 1915A (West).

When a party raises timely objections to a magistrate judge's report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). When no objections are timely filed, a district court reviews a magistrate judge's report and recommendation for clear error. Fed. R. Civ.

---

[2] However, the motions did not directly address the retaliation claim as construed by the Magistrate Judge.

P. 72, advisory committee note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.").

As to non-dispositive motions, magistrate judges may be designated to hear and determine "any pretrial matter pending before the court." 28 U.S.C. § 636(b)(1)(A). When reviewing such determinations by the magistrate judge, the district court may reconsider the determination "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Id.*

A motion to dismiss brought under Fed. Civ. R. 12(b)(6) argues that the operative complaint fails to state a claim for which relief can be granted. When ruling on such a motion, the court is "[r]equired to construe the complaint in a light most favorable to the plaintiff and to accept the factual allegations as true." *Leisure v. FBI of Columbus, Ohio*, 2 F. App'x 488, 489 (6th Cir. 2001). Pleadings filed by *pro se* litigants are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106, 97 S. Ct. 285, 292 (1976)). However, the court is not required to credit a claimant's "summary allegations or unwarranted legal conclusions." *Leisure*, 2 F. App'x at 489 (citing *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999), *abrogated by Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)). "Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings

[4]

without converting the motion into one for summary judgment." *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010).

## DISCUSSION

As noted above, no objections have been raised to the supplemental R&R, and thus the Court may adopt the R&R in the absence of clear error. The Court will do so here, except for the portion of the R&R which found Williams to be stating a claim for retaliation, which the Court determines to be clear error. Furthermore, the Court finds the motions to dismiss to be well-taken.

### I. The Court Adopts the R&R Except for the Construction of a Retaliation Claim.

In his Amended Complaint, Williams articulates three (3) "Claim[s] for Relief": (1) "[Violation] of the First Amendment to the United States Constitution"; (2) "Substantive and Procedural Due Process Violations of the 14th Amendment"; and (3) "Civil Conspiracy to Violate 14th Amendment Right to Equal Protection of the Law." Doc. 8. The Magistrate Judge read the Amended Complaint to raise a total of five (5) distinct claims, articulated in the R&R as:

1. Fourteenth Amendment Equal Protection claims against all Defendants for the alleged discrimination toward Plaintiff as an inmate convicted of sex crimes against children;

2. Eighth Amendment cruel and unusual punishment claims against all Defendants for denying Plaintiff's participation in Family Day;

3. First Amendment freedom of association claims against all Defendants for allegedly infringing on his right to visit with and parent his children;

[5]

4. Conspiracy claims against all Defendants for allegedly collectively planning to block Plaintiff from participating in Family Day; and

5. Retaliation claims against all Defendants for allegedly denying Plaintiff's Family Day application because he has filed multiple lawsuits.

Doc. 9, # 292-93.

However, the Magistrate Judge further found that the claims enumerated 2 (8th Amendment) and 4 (conspiracy) in the list above warranted dismissal. With no objections to the R&R, the Court will adopt the recommendations and dismiss the 8th Amendment and Conspiracy claims. The Court also agrees that claims 1 and 3 in the list above are pleaded with sufficient clarity in the Amended Complaint to survive initial screening. However, the Court respectfully declines to adopt the additional finding that a retaliation claim can be properly construed from the pleadings.

The Court recognizes that *pro se* pleadings are "to be liberally construed." *Erickson*, 551 U.S. at 94. And that the Magistrate Judge construed the retaliation claim "in an abundance of caution," and as "only a preliminary determination." Doc. 9, # 293. Nevertheless, the Court finds that a retaliation claim is inconsistent with the pleadings and the substance of Williams' allegations.

The R&R cites a single sentence in the Amended Complaint as the source of the retaliation claim, in which Williams writes:

> The fact that Christopher has filed multiple lawsuits, and then thereafter, had been denied equal treatment, when in the past he was allowed to participate in all other Family Day Activities was the result of a conspiracy of all the named defendants.

[6]

Doc. 8, # 274. Though this allegation raises the specter of retaliation, it goes no further. Williams appears to be stating this as an explanation for why Alfred Marcus was named as a Defendant when he "had nothing to do with the discrimination grievance," but was knowledgeable of Williams' previous lawsuits.[3] *Id.* at # 274. Williams cites the record of his institutional grievance regarding the Family Day event, which shows that the grievance was "viewed" by "Marcus, A.," shortly before the grievance was denied by Defendant Ivey. Doc. 3-1, # 117. This does not allege a sufficient factual basis to state a plausible claim for retaliation. Even assuming that Defendant Marcus was aware of his prior lawsuits, Williams was denied from participating in the Family Day event before Marcus "viewed" the grievance. *Id.* Beyond that, the Court finds that any possible retaliation claim suffers from the same causal deficiencies articulated by the Magistrate Judge regarding the civil conspiracy claim. *See* doc. 9, # 295.

In the R&R, the Magistrate Judge recommended dismissal of the conspiracy claim due to Williams' allegation that the "unwritten policy… is not new and has been done for years before [he] was injured." *Id.*; doc. 8, # 282. Therefore, the Magistrate Judge reasoned, "it is mere conjecture to allege that Defendants created a custom[4] they could rely on years later" to injure Williams. Doc. 9, # 295. This is equally true

---

[3] Williams does not actually allege any reason that Defendant Marcus (or any other Defendant) would be aware of Williams' past lawsuits, but because Williams sued Defendant Marcus in a previous case in this Court (*see* case no. 2:23-cv-01042), the Court can presume such awareness for the purpose of interpreting Williams' pleadings.

[4] As noted above, the restriction was imposed *not by* Defendants but by inmate volunteers serving on the board of the club that organized the Family Day event, thus further attenuating any connection between these Defendants and Williams' alleged injury.

for any retaliation claim, as Williams identifies the "not new" policy as the sole source of his injury. Doc. 8, # 282. Furthermore, Williams does not allege a sequence of events which could plausibly describe retaliation. He alleges he "filed multiple lawsuits, and then thereafter" was denied participation in *a* Family Day, "when in the past he was allowed to participate in all other Family Day Activities." *Id.* at # 274. But he was permitted to participate in a different Family Day event on September 19, 2025, mere weeks before the Family Day from which he was barred (and years after Williams' first brought lawsuits against the institution and its employees, *see supra* n.3). Furthermore, his pleadings indicate that he has participated in other Family Day events in the past and will be permitted to do so in the future. *See* doc. 8, # 275 (alleging Defendants "let certain groups discriminate if they want to, the[n] let other Groups like Helping Hands not add the discriminating clause when they have family days.").

Williams simply does not allege any facts that can be construed to support a retaliation claim. He does not allege that Defendants became aware of his lawsuits after his participation in the September Family Day, such as would support a retaliatory chain of events.[5] Notwithstanding his undeveloped suggestion of retaliation, Williams consistently alleges that he was injured because of animus

---

[5] Though not entirely clear from the pleadings, the Court's understanding is that the child-victim-offender restriction on Family Day participation was imposed by the R.A.M. Gavel Club, the organization hosting the October Family Day event, while the September Family Day event (a marathon fundraiser) was not put on by the R.A.M. Gavel Club, and thus no such restriction applied. But even assuming the same restriction applied to both events, but was only enforced for the October event, Williams' has still not described a retaliation claim, but has merely speculated that he was barred from participation for reasons other than the written restriction which plainly applies to him.

[8]

against him due to his crimes of conviction. *See also Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Spies v. Voinovich*, 48 F. App'x 520, 524 (6th Cir. 2002)) ("an 'inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory.'"). That theory, which is distinct from a retaliation theory, is adequately accounted for under Williams' Equal Protection and Free Association claims which were allowed to proceed. Therefore, the Court finds that the construction of a retaliation claim was clear error which the Court declines to adopt.

## II. Defendants' Motions to Dismiss as to the Remaining Claims are Well-Taken.

Defendants moved to dismiss Williams' Amended Complaint in three (3) separate (but substantively identical) motions. Doc. 13; doc. 15; doc. 18. Because the Court adopts the R&R's dismissal of all but the Equal Protection and Free Association claims, the Court need not consider the motions to the extent they raise arguments beyond those remaining claims.

### 1. The Pleadings Do Not Raise a Viable Free Association Claim.

Williams has not pleaded a reasonably plausible claim of violation of his right to free association. The Supreme Court has observed that freedom of association is "among the rights least compatible with incarceration." *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162 (2003). This is not to say that such a right is "altogether terminated by incarceration," but a regulation that limits inmates' rights to free association will be upheld so long as it bears a rational relation to legitimate penological interests. *Id.* at 131-32.

In this case, such precedent squarely forecloses Williams' claim as alleged. As the Supreme Court noted with regard to restrictions on visitations by children, such regulations "bear a rational relation to… valid interests in maintaining internal security and protecting child visitors from exposure to sexual or other misconduct." *Id.* at 133. Restricting inmates convicted of crimes[6] against children from participating in a child-oriented event serves the same valid interests. Williams disagrees, contending that the restriction unfairly applies to "all of whom are convicted of crimes against children, and not to other inmates who are similarly situated in every relevant way." Doc. 8, # 279. But he is incorrect, because convictions of crimes against children are facially relevant to the propriety of restricting inmates from participating in a child-oriented event. *See sub.*, § II.2.

Supreme Court precedent also instructs the Court to consider "whether alternative means are open to inmates to exercise the asserted right." *Overton*, 539 U.S. at 132. Williams' pleadings make clear that he indeed has alternative means to exercise the right, which he describes as "maintaining a relationship to care for, and raise up, his natural children for secular and non-secular relational rearing." Doc. 8, # 279. He claims that restricting his participation in Family Day is "not supported by law or legitimate penological interests when the **ODRC has permitted [him] to have his minor children on his visiting list, and visit him at every visit.**" *Id.* (emphasis supplied); *see also id.* at # 272 ("[Williams'] children have come to multiple family days in other programs here in this institution"); *and id.* at # 273 ("[Williams]

---

[6] Williams' assertion that he is innocent of the crimes for which he was convicted is irrelevant here, where he is guilty of the crimes as a matter of law.

[10]

has never been accused of any illegal activities on a visit with his family."). In other words, he sees his children regularly.[7]

Because Williams has a means of exercising his substantially curtailed right to free association, his inability to participate in Family Day events hosted by the R.A.M. Gavel Club is as much of a constitutional injury as any other day he is unable to associate with his family due to circumstances inherent to his incarceration—which is to say, it is no injury at all.

### 2. The Pleadings Do Not Raise a Viable Equal Protection Claim.

Williams fails to state an Equal Protection claim for which relief can be granted. "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). Here, Williams acknowledges that he has not been targeted as a member of a suspect class, but he instead proceeds under a class-of-one theory. Doc.

---

[7] Thus, by his exclusion from (a single) Family Day, Williams and other inmates convicted of crimes against children are, in effect, only being prevented from associating with *other* children and families who might attend that particular event. In this sense, the policy draws even stronger support from *Overton*, which affirmed the constitutionality of prison regulations defining how closely related an inmate must be to a minor for the minor to be allowed to visit the inmate. *See* 539 U.S. at 133 (considering regulations which excluded, *inter alia*, "minor nieces and nephews and children to whom parental rights have been terminated"). Williams contends that "[t]here is no law that says [he] cannot be around children on visits due to the crime for which he is convicted" (doc. 8, # 280), but the very fact of his *consecutive life terms of imprisonment* for his crimes (rape of minors under the age of 13), along with *Overton*'s recognition of free association as "among the rights least compatible with incarceration" (539 U.S. at 131), complicate that assertion. Williams' efforts to challenge the constitutionality of his convictions have been unsuccessful. *See, e.g., Williams v. Hamilton Cnty. Prosecutor*, 2025-Ohio-3298, *appeal not allowed sub nom. Williams v. Hamilton Cty. Prosecutor*, 2026-Ohio-13, 180 Ohio St. 3d 1464, 272 N.E.3d 1213.

8, # 268. To prevail on a class-of-one theory, a plaintiff "may demonstrate that government action lacks a rational basis either by [(1)] negativing every conceivable basis which might support the government action, or [(2)] by showing that the challenged action was motivated by animus or ill-will." *TriHealth*, 430 F.3d at 788.

In his Amended Complaint, Williams repeatedly recites the above standard, claiming he can demonstrate that each Defendant's action "lacks a rational basis" in both ways, i.e., by rebutting every conceivable basis *and* by showing ill-motives. Doc. 8, # 269. On either theory, Williams fails to convert. First, Williams cannot show improper motivation for reasons already discussed—namely, the lack of any facts plausibly indicating animus or ill-will, and the complete lack of any causal connection to the Family Day restriction. *See supra*, § I.

Nor can he rebut every conceivable basis for the restriction. The Court finds that restricting inmates with child-victim offenses from participating in child-oriented events is facially rational. But even without such a finding, government action bears a "strong presumption of validity," on rational basis review. *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 314, 113 S. Ct. 2096, 2102 (1993). Therefore, the Court need not resort to fact-finding, because a government action "may be based on rational speculation unsupported by evidence or empirical data," and nevertheless pass constitutional muster. *Id.* at 315. In other words, there need not be evidence in the record supporting the practical wisdom of the restriction.

Against that standard, Williams' arguments fall flat. He contends that the policy excluding inmates with child-victim offenses is irrational when other violent

[12]

criminals may be allowed to participate. This also goes to his similarly-situated argument: Williams claims that he is receiving disparate treatment when he is excluded from participation in a Family Day based on his child-victim offense, when inmates with violent offenses are included in the event despite being "similarly situated… *in all relevant respects*." Doc. 8, # 272 (emphasis original).[8] While the Court must "accept the factual allegations as true," it is not required to credit a claimant's "unwarranted legal conclusions." *Leisure*, 2 F. App'x at 489. Williams' assertion that he is similarly situated in all relevant respects is pure speculation presented as a legal conclusion without factual support.

More importantly, a classification, such as the one to which Williams was subjected, "does not offend the Constitution simply because the classification is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S. Ct. 1153, 1161 (1970) (internal quotations omitted); *see also Beach Commc'ns*, 508 U.S. at 315-16 (regulatory line-drawing "inevitably requires that some persons who have an almost equally strong claim… be placed on different side of the line, and the fact that the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration") (internal quotations omitted).

In sum, Williams has not alleged facts which support an Equal Protection claim. Even assuming the threshold issue—that the rule excluding Williams, passed

---

[8] Whereas Williams refers to "relevant" similarities (or differences), the Sixth Circuit refers to the "materiality" of the same. *TriHealth*, 430 F.3d at 790. Regardless, the Sixth Circuit has observed that "[m]ateriality is an integral element of the rational basis inquiry." *Id.*

[13]

by a board of inmate volunteers, can be fairly considered as government action—and construing all other inferences in his favor, Williams has not made any allegation "sufficient to overcome the presumption of rationality that otherwise attache[s] to governmental action." *TriHealth*, 430 F.3d at 789; *cf. Bower v. Vill. of Mount Sterling*, 44 F. App'x 670 (6th Cir. 2002) (Equal Protection claim sufficiently pleaded where allegations described conduct patently contrary to state law). Therefore, the Court will grant Defendants' motions and dismiss this claim.

## CONCLUSION

For the reasons stated above, the Court **ADOPTS** the R&R in part and **DISMISSES** Williams' Eighth Amendment and Civil Conspiracy claims. However, the Court declines to adopt the R&R to the limited extent that it construes the Amended Complaint to state a retaliation claim, which the Court finds to be clear error. Furthermore, the Court **GRANTS** Defendants' motions to dismiss the remaining claims. Finally, the Court **CERTIFIES** to the United States Court of Appeals that an appeal would be objectively frivolous and therefore Williams should not be permitted to proceed *in forma pauperis*.


　　　　**IT IS SO ORDERED**.


　　　　　　　　　　　　　　　　　s/ James L. Graham
　　　　　　　　　　　　　　　　　JAMES L. GRAHAM
　　　　　　　　　　　　　　　　　United States District Judge

DATE: June 29, 2026


[14]